Good morning, Your Honor. May it please the Court, my name is Brendan Ford. I represent one of the appellants, Joshua Weiss. With me at council table is David Darnell. He represents Mr. Ferrell and Mr. Reed. He will be addressing the Ferrell-Reed appeal as well as the petition for mandamus. I'll be addressing the Weiss appeal. Have you come to an agreement as to how you're going to share time with Mr. Darnell? We have, Your Honor. I'll be approximately four minutes, and he'll be the remaining seven with four for rebuttal. And we'll track our time accordingly. Thank you. Your Honor, this case presents an opportunity for the Court to enforce its prior ruling in In re Napster. One of the challenges with the crime fraud exception in this particular matter is that the plaintiff, NIC, Natural Immunogenics, which we call NIC, has engaged with what we call, for lack of a better phrase, jurisprudential whack-a-mole. The basis for the purported crime fraud has shifted as the case has progressed, and that has made it quite challenging for us in order to make funds. Let me ask you this. Ask to Mr. Weiss, why isn't it moot, as I understand that the chain emails have been disclosed already, correct? That is correct, Your Honor. It's not moot because, as we set forth in our reply brief, the voluntary disclosure of emails pursuant to a court order does not waive privilege. It's only when there's the voluntary production of documents that there is considered waiver or mootness. And we cite a number of Ninth Circuit cases for that proposition in our... What is the harm that you seek to present now then? Prevent, rather. What is the harm that you seek to prevent? Well, it's multifold, Your Honor. First of all, we want to prevent any kind of subject matter waiver being interpreted on a go-forward basis. And second, we believe that it's an attorney-client privilege document that, consistent with precedent, is subject to a clawback. And so we don't believe that it's appropriate for attorney-client documents to be produced under the guise of crime-fraud when no adequate showing has been provided in terms of crime-fraud. Moreover, the first iteration of natural immunogenics crime-fraud justification is based on the fact that Strataluz, which is the company that was formed in the... or discussed during the e-mails, was created solely, and I emphasize solely, as a vehicle to advance what they purport to be sham litigation. That was the justification. It had no legitimate business purpose whatsoever, and it was created solely to advance sham litigation. Well, that was disproven relatively quickly because, A, they relied on unverified pleadings, but, B, and more importantly, declarations from Mr. Weiss, from Mr. Reed, and Mr. Farrell state unequivocally that this was a legitimate business and created a number of products, such as 2-Minute Booties, one of them Glutea, which is a gluten-sensitivity supplement, Eversilk, and others. So, having had their initial basis for production taken apart, they've now gone to the second issue, which is Promaxil, which is one of the products that was purportedly made, or they allege is a vehicle for sham litigation. The challenge here, Your Honor, is that the Napster test focuses at the time of the e-mail. What was the thought process that was going through? Was the counsel being sought for the purpose of fraud or crime?  And the challenge here is that, even under their interpretation of it, this Promaxil product was not developed, licensed, formulated, in any way, shape, or form until at least 2015. And the supplemental excerpts at pages 66 and 67, which are attached as Exhibit A to NIC's motion to supplement the record, reveals that. And that is deposition testimony from Mr. Weiss himself, which states that Promaxil wasn't even developed until 2014 or 2015. Now, the e-mail at issue existed as of January 8, 2014. Barring time travel that I'm not aware of, it is impossible to form a corporation with the intent of creating products a year from then that are then going to be used as vehicles for sham litigation. I see that my time is up. I've already exceeded my time. Unless the court has any questions, I yield the rest to Mr. Darnell. Thank you. Thank you, Your Honors. Thank you, Your Honor. You may please report. You asked earlier, what is the prejudice? The prejudice is significant in this case. The prejudice to Weiss may be different from the prejudice to your people because Weiss was a non-party. The prejudice is perhaps less as significant to Weiss because he's not a party. But it is significant in this case because this is the first of at least three pending crime fraud motions seeking to compel the production of at least 1,698 documents. And the problem that we have here is that we need the court to implement the correct standard. And the standard under NAFSA requires the two-step process, the intent to commit a crime at the time the communication with the attorney takes place, and then the nexus to show that there is a sufficient nexus to establish that the communications were sufficiently related to and were made in furtherance of the intended crime. The problem that we have here is that the plaintiff is all over the board in terms of their allegations, and they cannot establish that nexus as a matter of law. What happened with Promaxil and litigation and allegations about that litigation in June of 2015 has nothing to do with forming the corporation in January of 2014. When the corporation was formed, it marketed and sold at least two products. Then it marketed and sold a third product. What happened with Promaxil, again, litigation, June of 2015. No litigation whatsoever with the first two products. And then the third product, there was some litigation in June of 2015. But the whole theory here that this corporation was formed solely to pursue fraudulent litigation doesn't match up with the facts. It doesn't meet the standard, and there's no nexus. And that's why we submit it's inappropriate for the court to issue the ruling that it did in connection with continuity. Briefly on the jurisdictional issue, we submit that Weiss does have jurisdiction under Grain and under Perlman, and we also submit that because of that, and we have a companion appeal here today, it would be a waste of judicial resources to deny these same arguments that are brought by Farrell and Reed. Moving forward to the petition for writ of mandate. The issue here is whether... Mr. Weiss, because he's a non-party to the case, but as to your clients, I think Mohawk presents a jurisdictional problem, doesn't it? I would absolutely agree if Weiss was not here. Through the whole process and then appeal. If Weiss was not here, I would absolutely agree. If Weiss was not a privilege holder, I would absolutely agree. If Weiss was not a non-party, I would absolutely agree. But Weiss is here, Weiss is a privilege holder, and Weiss is a non-party. That meets all of the requirements for Perlman. That means that we should be able to have these same issues decided along with the Weiss issues. To hold otherwise... France takes care of Weiss. Weiss is taken care of, but you seem to be trying to bootstrap your clients onto Weiss, and Mohawk instructs otherwise, it appears. Mohawk did not have the same facts that we have here. Mohawk did not have a non-party also involved. In the same appeal with the same issues. And that's why we think it's distinguishable and it's important for these issues to be decided together. Otherwise, you're going to have the same document that the Weiss appeal may be decided upon, and we would not have an opportunity to address that until perhaps a year or two down the road. Your clients are able to assert defenses and otherwise protect the privilege, as Justice Sotomayor pointed out in Mohawk, by post-judgment appeals, content orders, and other review mechanisms. Weiss doesn't have that, which is why a panel of this Court decided, crane as it did, to afford protections to Weiss. So Weiss's problem may be bootness, but the other defendants have a different problem. And your problem is that your clients can still avail themselves of the appeal, the mechanisms of which Mohawk spoke and contemplated. And I don't dispute that. That's possible. But I believe that would be a waste of judicial resources. I believe that would create a serious risk of inconsistent rulings. We're going to have a panel rule on this issue now, and then a different panel rule on the Farrell and Reid appeal in two years or three years down the road, whenever this trial is completed and judgment is entered. I believe that because we're all here today, the briefs are before the Court, it would be a matter of judicial economy, as well as in the best interest of the parties who have spent a considerable amount of time briefing these issues, to have matters decided together. We also have filed a request to intervene with a Weiss appeal in connection with our papers. So if the Court doesn't want to hear it on an independent basis, we would request that we intervene and address it that way. Moving forward to the petition for writ of mandate. Your Honor, the issue here is a unique one. It's a product of the fact that the plaintiff filed an en masse shotgun crime-fraud motion seeking to compel the production of 1,696 documents and requiring the defendant to submit briefs in response to those motions. But we could not, in reality, address each of the documents in the brief. One, we don't have the space. We don't have the time. But more importantly, if we're going to talk about the content of privileged documents to defend crime-fraud attacks, that would result in a waiver of privilege because we're disclosing privileged content. So we couldn't do it as a practical matter. We couldn't do it as a matter of law. So what we had to do was wait until we saw what the special master did and wait until we saw what the district court did in identifying the documents in the tentative ruling. It wasn't until 20 hours before the tentative ruling that we learned which of these 1,700 documents were actually potentially subject to a crime-fraud finding. When we found out these are the 26, we appeared in court and we said, Your Honor, may we have an ex-party hearing to discuss the content of these documents? I believe that the Napster opinion requires the parties to be given an opportunity to present evidence and argument in support of the claim of privilege. I believe we've been denied that opportunity because we can't talk about privileged documents. We can't disclose the contents. We can't defend them. We can't explain them. And when you can't do that in open court in front of opposing counsel, what you have is a de facto ex-party plaintiff's motion because they're swinging at us, throwing all kinds of allegations. Our hands are tied behind our back. That's a violation of due process, and I don't believe... Was there an opportunity to submit supplemental briefing? Before the court and to copy counsel? No, because we cannot talk about privileged documents unless we're going to waive privilege. We can't disclose the content. We could if we had an ex-party hearing, which is what we asked for. And there are cases that do allow for this. The Ninth Circuit does not have a specific case on point, but we believe it's an important issue. The Napster standard is pretty clear that you have to give an opportunity. But the district court did not give an opportunity under these circumstances. But aren't the Mohawk remedies still available if you choose to disclose? I believe it would be, in theory, yes. But as a practical matter, if you're going to have 25 or 170 or 1,600 privileged documents being presented at trial, and that's wrong, we're going to have to do a whole new trial, and the prejudice would be absolutely unduly and unbearable to the parties. I see I'm running out of time. I'd like to reserve the remainder of my time. Let me ask you this, and I'll add a minute back to your time. So what do you think the procedure should have been once the 26 documents were, at least under the tentative, going to be compelled? Then at that time, what do you think should have happened? I think what should have happened is exactly what happened under a Teo v. SEC. We have a next-party hearing, and we say, Your Honor, these are the few documents, the handful of documents that we absolutely disagree with. So you think that procedure needs to be mandated, that you have an opportunity at that point to address every single one of the 26 documents that the court identified? Well, the ones for which there's a good-faith argument on, yes. And I think it's going to be fact-dependent, it's going to be document-dependent, and case-dependent. If you're talking about a case like this where you have a shotgun motion as to 2,000 documents, you don't learn about which ones are really at issue until the hearing. Oh, these are the 26? Okay, let's talk about these. Allow us to defend ourselves. Thank you. Thank you. May it please the Court. Your Honors, my name is Peter Hangelske. I represent Natural Immunogenics. I'm the plaintiff and appellee in this matter. I'd like to first address the Stradlews-related appeals filed by Mr. Farrell and Reid and Mr. Weiss. Our position is that all of those appeals are mooted by this Court's binding precedent. At the outset, the Court's decision in In Re National Mortgage Equity, which is 821 F 2nd 1422, which was the 1987 case, and I mention that because there's two in the briefs by the same name. There's a 1988 case and 1987. The 1987 decision in In Re National Mortgage Equity is binding, I believe, on this Court with respect to the issue of mootness, and it was in that decision the Court addressed a Perlman appeal and specifically held that Perlman applies only if its application will prevent the disclosure of privileged information, and if the third party has already disclosed the information, the reason for expedited review no longer exists. Review is not available to determine whether previously disclosed material should be subject to a protective order or admissible at trial. That's the holding of this Court. It's spoken on this issue directly, and it forecloses both Mr. Weiss and Mr. Reid and Farrell's appeals in this issue. Continuity Products was the non-party custodian in this case. They produced the document to us a long time ago. The document... Our case is on exactly this, all fours, with the In Re National Mortgage case. In that case, In Re National Mortgage Equity, the appellants moved the district court for a stay of the order. It was denied. They moved the circuit court for a stay of the order. It was denied. That's exactly what happened in this case, and then promptly after the orders, the motions to stay were denied, and the email was accessible to us at that time, and we have it with us today. We can present argument on it as necessary. I think Mr. Weiss's jurisdictional footing suffers from a significant flaw that needs to be addressed, though, because there was discussion that, well, this is Mr. Weiss's only bite at the apple. He's a non-party. Perlman accommodates that. Well, first off, Perlman, I believe, is properly construed as a surrogate for contempt. That's how it was born out of the jurisprudence, and so where you have a circumstance where documents have already been produced, it makes sense to look at it through the same prism that you would as a contempt proceeding, and there's no longer any requirements on a custodian to do anything at all. Why would we have Perlman for that particular circumstance? The answer is they're trying to actually shoehorn the collateral order doctrine into this case under the name of Perlman. That's the risk in this case because Perlman, under the binding precedent which has been adopted in circuits nationwide, clearly stands for the proposition that it's a pre-disclosure remedy. It's an emergency petition to the court for relief, and the Wilson v. O'Brien case from the Seventh Circuit based its holding on that exact same premise as well. Now, Mr. Weiss says, hey, this is my only bite at the apple. That's actually not true. This court in 2013, in the legal voice case, which was 738 F3rd 1178, specifically held that non-parties stand on the exact same footing as parties in the appeal of interlocutory discovery orders. And in light of legal voice, Mr. Weiss today stands on the exact same footing as any other party in this case, and he can appeal these issues related to the attorney-client privilege in a post-judgment appeal. So if we're going to harmonize the Perlman doctrine with Mohawk, as this court has attempted to do in prior decisions, including Crane, I think the proper interpretation has to remain with this court's binding precedent, and the court needs to find that Perlman is, in fact, just a predisclosure remedy, and here all of the appeals are mooted. That doesn't end the inquiry, because I believe Judge Selma, at the district court level, offered yet another reason why, in these circumstances, the appeals would be jurisdictionally improper. He cited the fact that you have privilege holders that are parties in this case. They've offered that as an example for why they should be able to bootstrap themselves into this case along with Weiss. That's Farrell and Reed. They say, hey, he's here. We should be here, too. It's actually the opposite, because they're parties in the underlying case. Mr. Weiss technically doesn't have a footing under Crane and the precedent nationwide because his interests are going to be fairly represented throughout the duration of the case. So even if we didn't have a mootness issue on the table under dispositive precedent, I think Judge Selma's ruling in the underlying proceeding in denying their motion to stay is also accurate and correct with respect to his perspective on the law nationwide. Your Honor, because I don't believe that they have an entitlement to a merits decision on a moot appeal, I would like to briefly discuss the mandamus proceeding, unless this court has specific questions with respect to the Strahlews crime fraud order. I don't, Judge Marbley. Judge Gould? No questions here, thank you. Your Honor, the petition for a mandamus suffers from a similar, at the outset, a similar issue that we've seen with the Strahlews-related appeals, and that's the documents have been produced to us. We have the 26 files. They chose to comply with the district court's order. Now they're in a position where they're looking to rewind time and unscramble the egg, if you will, and put us back to a place where they are asking for an ex parte oral argument prior to production, which doesn't even appear to make sense at this point, given that we have the documents and we can also participate in that process without incurring any heightened risk or harm to their privilege, as they argue there would be harm. But besides that, Your Honor, well, I guess that speaks to the Bauman factors, which this court has to evaluate when evaluating whether or not a writ of mandamus would be appropriate here, and I think the inability to really provide meaningful relief in context with their petition should, on its face, I think, justify denial of the petition itself. But even going beyond that, if we get into the merits, I think one of the most important issues on a writ of mandamus is to find the district court had some kind of legal error or some kind of error in fact that would justify an extraordinary measure in mandamus, and that's just not present here. The district court did nothing improper. They cite Napster for the prospect that they need to have an opportunity to present evidence. They failed to explain that Napster, on its plain text, rejects their argument. The Napster court evaluated this issue and actually held that the court is not required to host an oral argument at all and that in certain circumstances it would be entirely appropriate to resolve the pleadings, resolve the issues on the papers alone. If that's the court's position in Napster, the court's clearly saying that the district court has discretion to resolve this in the way it best sees fit under the documents before the court. The court made that decision. It just determined it didn't need anything else. What they're asking for here is an oral argument behind closed doors. That's what they're saying. They're not asking to present testimony. They're not asking to present evidence like you'd see in perhaps a Fifth Amendment case. They're asking just to have argument, and they're asking to do it through a highly disfavored process of an ex parte proceeding, which other courts that have reached this issue, including the Bender decision in the Seventh Circuit, have said that there should be actually a presumption against this and that when you're dealing with document-based review, the proper pathway forward should actually be reviewed by the district court almost on its own entirely. There's another issue, I think, that defeats the mandamus on its face in that this court lacks a record to evaluate whether or not there even was an abuse of discretion. What if the documents on their face scream fraud? Now, I've reviewed the documents, and I believe they do, but the issue here is that this court can't evaluate whether Judge Selna even abused his discretion unless you review the actual documents, which, of course, they haven't provided to the court. There's much made about this sort of ambush-style pleading. I mean, I think the true facts in the way this crime fraud was litigated are very different from what's been presented. This is a motion that's been pending for two years now. Aspects of it are still pending. The court reviewed in camera a little over 250 of the documents that we submitted with our motion. That was subject to multiple layers of review. The special master reviewed those documents. They knew exactly what documents were at issue when they submitted them for in-camera review to the special discovery master. They knew which documents were at issue when they filed their objections with the district court. These are parties that have had five separate oral arguments and over 12 briefs on this particular issue. They have actually had an opportunity to submit evidence. They did. And the district court at one time remanded the proceedings to the special master specifically to consider the new evidence that they had submitted. So they're trying to equate this opportunity to present evidence that's articulated in Napster with a mandatory opportunity to present oral argument before the district court. I don't believe that lines up with the precedent. And as I mentioned, the Napster case, I think, firmly forecloses that option. The district court relied, again, on the bonder decision in exercising his discretion. I don't believe there's any basis to say that the district court erred in his use of discretion. Unless the court has additional time, I would submit on the records and the briefs at this point, unless the court has questions for me at this point, I would submit the remainder of our argument on the briefs. Thank you. I think we've got your argument. Thank you. Thank you, Your Honor. On the mootness issue, I'd point the court to the U.S. Supreme Court opinion in United States v. Hickory Apache Nation. It's a 2011 opinion that specifically held that compliance with a production order does not affect appellate review because the appellate decision, quote, may still provide effective relief by preventing further disclosure and excluding the evidence from trial. That opinion is also in accord with the U.S. v. Scientology case, also by the U.S. Supreme Court. The second issue I want to respond to is that this court is not a fact-finder. The trial court is a fact-finder. And what this court is asked to do is look at whether the trial court abused its discretion in providing for a meaningful hearing for the parties to rebut accusations of crime fraud as to specific documents. There's nothing wrong with the fact that these documents are not before this court. And I think it would actually be improper for these documents to be before this court. It's the process that we have a problem with. The last thing I would like to note is that the special master, out of the 26 documents, found that seven of them were subject to the crime fraud exception. The special master did not find that 19 of those 26 were subject to the crime fraud exception. The district court then went on and had a different opinion and found an additional 19 documents were subject to crime fraud. This is not a clear-cut case. It's not open and shut. It's not black and white. If reasonable minds can differ, the defendants need to be afforded an opportunity to rebut the accusations by discussing the documents and explaining why crime fraud does not apply. Unless the court has any other questions, we will submit. Thank you very much, Counsel. Thank you. For both sides for arguing this case. A lot of issues here. The matter submitted for a decision by the...
judges: Gould, Nguyen, Marbley